**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0094-17T4

TERRENCE CROWDER,[1]

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

    Respondent-Respondent.

_____

Argued December 6, 2018 – Decided May 10, 2019

Before Judges Simonelli and DeAlmeida.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-10-38667.

Catherine M. Elston argued the cause for appellant (C. Elston & Associates, LLC, attorneys; Catherine M. Elston, of counsel and on the briefs).

---

[1] Referenced in the record also as Terence Andre Crowder, Terrance Crowder and Terence Crowder.

Christopher R. Meyer, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Christina Cella, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Terrence Crowder appeals from the August 15, 2017 final agency decision of respondent Board of Trustees (Board), Police and Firemen's Retirement System (PFRS), which adopted the initial decision of an Administrative Law Judge (ALJ) affirming the Board's September 9, 2014 decision denying Crowder's application for accidental disability retirement benefits. Crowder also appeals from the Board's May 9, 2014 decision reversing the ALJ's grant of his motion to bar the State's expert. We affirm.

I.

Crowder worked for the City of Camden Fire Department for twenty-five years, ultimately serving as a Deputy Chief from 2003 to 2008. On April 23, 2008, while on duty, Crowder walked into the bay area of the fire department to talk to firefighter Luis Sanchez and Captain Howard Jones. As Crowder sat down on a plastic chair, the chair "exploded," breaking into several pieces and causing him to fall approximately two to three feet onto the concrete floor, hitting his lower back and tailbone (the 2008 incident). After Crowder fell,

Sanchez and Jones lifted him off the floor. Crowder felt a "very sharp pain" in his lower back and was transported to the hospital. It was subsequently determined that Crowder could no longer perform the duties of a firefighter. On February 4, 2009, he applied for accidental disability retirement benefits based solely on the 2008 incident.

The Board does not dispute that the 2008 incident was a traumatic event within the meaning of N.J.S.A. 43:16A-7 and that Crowder is permanently and totally disabled from the performance of his regular and assigned duties. In addition, it is undisputed that Crowder suffered work-related injuries to his lower back in 1986, 1987, and 1995, and had a preexisting degenerative condition in his lumbar spine dating back to 1996.[2] The Board determined that Crowder's disability was not a direct result of the 2008 incident, but rather was the result of a preexisting disease alone or a preexisting disease that was aggravated or accelerated by the work effort. Thus, the Board denied Crowder's

---

[2] A July 8, 1996 MRI of Crowder's lumbar spine showed he had disc desiccation and degeneration from L3-L4 though L5-S1, a disc bulge at L4-L5, and disc herniation at L3-L4. A July 13, 2005 MRI showed Crowder had disc desiccation, a disc bulge at L3-L4 and L4-L5, and a disc herniation at L5-S1. The MRI report also indicated that "[t]he findings are worse when compared to prior [MRI]." A June 9, 2008 MRI showed degenerative change at L3-L4 through L5-S1 with bulging and degenerative annular tears at multiple levels.

 A-0094-17T4

application for accidental disability retirement benefits and granted him ordinary disability retirement benefits.

Crowder appealed and the matter was transferred to the Office of Administrative Law (OAL) for a hearing. The ALJ had to determine whether Crowder's disability was a direct result of the 2008 incident. The ALJ gave greater weight to the testimony of Crowder's orthopedic expert, Arthur H. Tiger, M.D., than the testimony of the Board's expert. Tiger testified that all of Crowder's MRIs showed significant worsening of his preexisting degenerative condition, Crowder's level of pain and discomfort had increased, and there was "a great deal more pathology present." Tiger admitted that the 2008 incident aggravated Crowder's preexisting degenerative condition, causing his disability. He concluded that the 2008 incident was the "tipping point" that led to Crowder's inability to perform his duties as a firefighter.

The ALJ also considered Crowder's testimony. Crowder testified he was still able to perform his regular and assigned duties after the prior incidents. However, he admitted: "I was always having . . . soreness and problems with my back, stiffness and there were times I couldn't get up, you know, it was constant, ever since the first . . . injury that I fell [in 1986] I was always having problems[.]" He also testified he received chiropractic treatment two to three

times a week for more than twenty-six years, and his chiropractor was still treating him on a regular basis at the time of the OAL hearing. When asked if he ever had to miss work prior the 2008 incident due to his lower back, Crowder replied "[y]eah, I always took sick days, I was always off sick. I used the average of between [eighteen] and [twenty] sick days per year. I would call in sick and say, 'Back spasms, you know, I'm unable to work.'" He further testified, "I was constantly always in back pain, you know, there were some days I could function and some days I couldn't[.]" Further, as a result of the prior incidents, Crowder was found partially permanently disabled by workers' compensation judgments.

Despite giving greater weight to Tiger's testimony, the ALJ found the 2008 incident was not the essential significant or substantial contributing cause of Crowder's disability. The ALJ reasoned:

> It is clear from the record that [Crowder's] pre-existing condition was longstanding and severe. . . . The mere fact that [Crowder] was unable to return to work after the . . . 2008 incident does not render the incident the substantial contributing cause of his disability.
>
> Even Dr. Tiger acknowledged that [the 2008 incident] had aggravated a prior degenerative condition in [Crowder's] lower back. . . . Signs of degenerative changes were present as early as 1996.

5

The ALJ concluded that Crowder's preexisting degenerative condition, which was aggravated by the 2008 incident, was the essential significant or substantial contributing cause of his disability, and denied his appeal of the Board's denial of his application for accidental disability retirement benefits. The Board adopted the ALJ's initial decision.

II.

Crowder argues that the Board's decision was contrary to Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 212 (2007), which Crowder incorrectly claims provides for accidental disability retirement benefits when a traumatic event combines with a preexisting condition. Crowder also argues the medical evidence established that the 2008 incident was the cause of his total and permanent disability.

Our review of the Board's decision is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). We will not disturb the Board's decision absent "a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483

(2007)). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting Herrmann, 192 N.J. at 28). Furthermore, "[i]t is settled that '[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" E.S v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (second alteration in original) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)). "Nevertheless, 'we are not bound by the agency's legal opinions.'" A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State, Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)). "Statutory and regulatory construction is a purely legal issue subject to de novo review." Ibid. Applying the above standards, we discern no reason to reverse.

Accidental disability retirement benefits under the PFRS are governed by N.J.S.A. 43:16A-7, which provides in part:

> any member may be retired on an accidental disability retirement allowance; provided . . . the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties and that such disability was not the result of the member's

willful negligence and that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him.

[(Emphasis added).]

In <u>Richardson</u>, 192 N.J. at 212, our Supreme Court clarified the meaning of the term "traumatic event," stating that "a traumatic event is essentially the same as what we historically understood an accident to be — an unexpected external happening that directly causes injury and is not the result of pre-existing disease alone or in combination with work effort." The Court found that in using the term "traumatic event," the Legislature intended "to excise disabilities that result from pre-existing disease alone or in combination with work effort from the sweep of the accidental disability statutes and to continue to allow recovery for the kinds of unexpected injurious events that had long been called 'accidents.'" <u>Id.</u> at 192. The Court noted that the Legislature "intended to make clear that a pre-existing condition that, in connection with work effort, caused injury would not qualify as an accident" under the statute. <u>Id.</u> at 199. Thus, "the Legislature sought to prohibit the grant of accidental disability benefits to a member disabled by a pre-existing condition, alone or in combination with work effort[.]" <u>Id.</u> at 210.

A-0094-17T4

In light of this Legislative intent, the Court returned to the views adopted in the strand of cases that followed Cattani v. Bd. of Trs., Police & Firemen's Ret. Sys., 69 N.J. 578, 584 (1976). Richardson, 192 N.J. at 212; see also Gerba v. Bd. of Trs. of Pub. Emps. Ret. Sys., 83 N.J. 174, 183 (1980); Korelnia v. Bd. of Trs. of Pub. Emps. Ret. Sys., 83 N.J. 163, 170 (1980). That strand of cases, which would now control the evaluation of accidental disability retirement applications, "reaffirm[ed] that a traumatic event can occur during usual work effort, but that work effort itself or combined with pre-existing disease cannot be the traumatic event." Richardson, 192 N.J. at 211. Thus, by returning to the interpretation derived in those cases, the Court made it clear that "injury resulting from a member's pre-existing disease, even if combined with the exertions of work effort, was not an external force and thus not a traumatic event." Id. at 212.

The Court therefore established a framework for evaluating applications for accidental disability retirement, finding that to obtain accidental disability benefits, an employee must prove:

1. that he is permanently and totally disabled;

2. as a direct result of a traumatic event that is

    a. identifiable as to time and place,

9

b. undesigned and unexpected, and

c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Id. at 212-13 (emphasis added).]

The Court has clarified the "direct result" requirement throughout the Cattani strand of cases, noting that although the traumatic event need not be the sole or exclusive cause of the disability, it must be "the essential significant or the substantial contributing cause of the resultant disability." Gerba, 83 N.J. at 186; Korelnia, 83 N.J. at 170. Thus, a traumatic event that acts in combination with an underlying preexisting condition may satisfy the "direct result" requirement "[a]s long as the traumatic event is the direct cause . . . of the disability[.]" Gerba, 83 N.J. at 187. However, the Court held:

Where there exists an underlying condition such as osteoarthritis which itself has not been directly caused, but is only aggravated or ignited, by the trauma, then the resulting disability is, in statutory parlance,

A-0094-17T4

"ordinary" rather than "accidental" and gives rise to "ordinary" pension benefits. Hence, in terms of a traumatic event equating with a statutorily sufficient medical cause of an "accidental" disability, what is now required . . . is a traumatic event that constitutes the essential significant or the substantial contributing cause of the resultant disability.

[Id. at 186.]

This requirement was "intended to impose a stringent test of medical causation." Korelnia, 83 N.J. at 170. Thus, an applicant must establish a direct connection between the traumatic event and his current disability by a "preponderance of the believable evidence." Russo v. Teachers' Pension & Annuity Fund, 62 N.J. 142, 147 (1973).

Crowder argues the Board and ALJ failed to acknowledge that accidental disability benefits are appropriate where the disability was caused by a traumatic event combined with a preexisting condition. In doing so, Crowder correctly notes that a traumatic event need not be the sole or exclusive cause of the disability. However, Crowder incorrectly argues that the traumatic event also need not be the significant or substantial cause of his disability. This argument is directly refuted by governing case law, which provides that although "the traumatic event need not be the sole or exclusive cause of the disability[,]" it must be "the direct cause, i.e., the essential significant or substantial

A-0094-17T4

contributing cause of the disability[.]"  Gerba, 83 N.J. at 187; see also Korelnia, 83 N.J. at 170 ("[T]he trauma, while it need not be the sole or exclusive causative agent, must at the very least be the essential significant or the substantial contributing cause of the disability.").

The 2008 incident was not the direct cause of Crowder's disability. Rather, as the ALJ correctly found, Crowder's preexisting degenerative condition, which was aggravated by the 2008 incident, was the essential significant or the substantial contributing cause of his disability.  Thus, the Board did not err in adopting the ALJ's decision.  The ALJ properly applied the Legislative intent, as noted in Richardson and the Cattani strand of cases, and reached her conclusion based on the evidence.

In challenging the Board's and ALJ's decisions, Crowder relies on prior Board decisions granting accidental disability retirement benefits to employees who suffered traumatic events which, combined with a preexisting condition, resulted in their total and permanent disability, specifically, Titus v. Public Employees' Retirement System, 2016 N.J. AGEN LEXIS 1093 (Nov. 17, 2016); Diaz v. Board of Trustees, Public Employee's Retirement System, 2014 N.J. AGEN LEXIS 198 (May 1, 2014); Goodman v. Teachers' Pension & Annuity Fund, 2013 N.J. AGEN LEXIS 153 (Apr. 23, 2013); Cominsky v. Board of

Trustees of the Teachers' Pension & Annuity Fund, 2013 N.J. AGEN LEXIS 54 (Mar. 14, 2013); and Erbetta v. Public Employees' Retirement System, 2012 N.J. AGEN LEXIS 140 (Mar. 12, 2012). However, these administrative decisions do not bind future agency decisions or this court. See Lubliner v. Bd. of Alcoholic Beverage Control, 33 N.J. 428, 443 (1960).

Moreover, the decisions are distinguishable. In Titus, Diaz, Cominsky, and Erbetta, the Board determined that the petitioners' disabilities were the direct result of the traumatic events, as the petitioners were asymptomatic prior to the traumatic events and had not had any issues or injuries to the areas of concern before their accidents. In Goodman, although the petitioner was not asymptomatic prior to the incident, she had no restrictions in her activities of daily living prior to the accident.

Crowder suffered multiple work-related injuries to his lumbar spine and exhibited chronic symptoms for several years prior to the 2008 incident. His testimony confirms that, despite claiming he performed all his duties and was physically active prior to the 2008 incident, he had clearly suffered from severe back pain and spasms for many years prior thereto. Furthermore, his symptoms clearly interfered with his work, as evidenced by his testimony that he had to take numerous sick days each year as a result of those symptoms.

A-0094-17T4

We are satisfied that the Board's decision to deny accidental disability retirement benefits was not arbitrary, capricious or unreasonable and was amply supported by the record. Crowder failed to prove that the 2008 incident was the essential significant or the substantial contributing cause of his disability. He, thus, is entitled only to ordinary disability retirement benefits. See Gerba, 83 N.J. at 186.

III.

During the OAL proceedings, Crowder sought to claim that his disability was the direct result of the prior 1986, 1987 and 1995 incidents, as well as the 2008 incident. Because the prior incidents occurred more than five years before Crowder submitted his application, and because his application only listed the 2008 incident, the Board advised Crowder that he must submit medical documentation showing there was a delayed manifestation of his disability or that he did not file his application within the five-year period due to circumstances beyond his control. Crowder did not submit the required medical documentation, and his attorney conceded before the ALJ that "[w]e don't have medical evidence of delayed manifestation[.]"

Crowder nevertheless argues the Board should have considered the cumulative effect of work-related traumatic events in causing his disability,

including the prior incidents, and granted him accidental disability retirement benefits.  We disagree.

Separate, cumulative work-related injuries may constitute traumatic events for the purpose of awarding accidental disability retirement benefits.  See Gerba, 83 N.J. at 188.  Accordingly,

> where . . . the evidence demonstrates that the member's permanent and total disability has been directly brought on by a combination of traumatic events occurring during and as a result of his performance of his regular or assigned duties . . . the statutory criteria are satisfied even though the precise contributory role of each event separately may be uncertain.
>
> [Toma v. State, Bd. of Trs., Police & Firemen's Ret. Sys., 172 N.J. Super. 76, 85 (App. Div. 1980).]

However, an application for accidental disability retirement benefits "must be filed within five years of the original traumatic event."  N.J.S.A. 43:16A-7(1) (emphasis added).  The Board

> may consider an application filed after the five-year period if it can be factually demonstrated to the satisfaction of the [Board] that the disability is due to the accident and the filing was not accomplished within the five-year period due to a delayed manifestation of the disability or to other circumstances beyond the control of the member.
> [Ibid. (emphasis added).]

15

In order to establish a delayed manifestation, the applicant must prove that "the disability is not manifested until more than five . . . years after the accident." Hayes v. Bd. of Trs. of Police & Firemen's Ret. Sys., 421 N.J. Super. 43, 55 (App. Div. 2011) (quoting In re Crimaldi, 396 N.J. Super. 599, 605 (App. Div. 2007)). If the employee is able to demonstrate a delayed manifestation, the application must be filed within a reasonable time after the physical manifestation of the disability. See Crimaldi, 396 N.J. Super. at 606.

Assuming the prior incidents constituted traumatic events within the meaning of N.J.S.A. 43:16A-7, Crowder did not file an application for accidental disability retirement benefits within five years of the original incident in 1986, or even within five years of the 1987 and 1995 incidents. He also failed to demonstrate that he did not file within the five-year period due to a delayed manifestation of the disability, as mandated by N.J.S.A. 43:16A-7(1). To the contrary, Crowder conceded he has no evidence of delayed manifestation and gave no reason why he did not file within the five-year period. Thus, the Board was not required to consider the prior incidents, or their cumulative effect on Crowder's disability.

Nevertheless, the record does not support Crowder's claim that the cumulative effect of the prior incidents directly caused his disability. Although

16

Tiger testified that the prior incidents <u>could</u> have accelerated the degenerative process in Crowder's lumbar spine, he gave no opinion as to whether they <u>actually</u> did so. Tiger had reviewed Crowder's MRI reports and workers' compensation records, but did not reach any conclusions regarding the effect, individually or cumulatively, of the prior incidents on Crowder's disability. Further, Tiger's testimony that any of the prior incidents, individually, could have accelerated a degenerative condition in Crowder's lumbar spine does not support Crowder's claim that the <u>combination</u> of the events caused Crowder's disability. In fact, Tiger's testimony refutes Crowder's argument by suggesting that the prior incidents could have aggravated his preexisting degenerative condition.

As previously discussed, accidental disability benefits are not available to an individual who has suffered a "disability resulting from the aggravation or acceleration of a preexisting disease even though unusual or excessive work effort is involved." <u>Cattani</u>, 69 N.J. at 585; <u>see also</u> <u>Richardson</u>, 192 N.J. at 210 (accidental disability benefits are not permitted if a member is "disabled by a pre-existing condition, alone or in combination with work effort"). Thus, even if Tiger had testified that the prior incidents, in combination with the 2008 incident, aggravated Crowder's degenerative condition, that conclusion would

not have qualified Crowder for accidental disability benefits. Furthermore, such an inference is not appropriate in this matter, as Tiger's reports and testimony make no mention of the cumulative effects, if any, of the prior incidents on Crowder's disability.

In addition, there is no other medical evidence in the record that indicates a combination of the prior incidents and the 2008 incident caused Crowder's disability. Thus, even if the Board was required to consider the prior incidents, there is no evidence to support Crowder's claim that his "disability has been directly brought on by a combination of traumatic events occurring during and as a result of his performance of his regular or assigned duties[.]" See Toma, 172 N.J. Super. at 85.

IV.

The OAL proceeding was substantially delayed following multiple adjournment requests and requests for additional hearing dates by both parties. During the proceedings, the Board's expert withdrew, requiring the State to obtain a new expert and requiring Crowder to undergo a third medical evaluation. The ALJ entered an order on April 3, 2014, barring the State's expert due to the significant delays and because requiring Crowder to undergo a third evaluation was "burdensome and inappropriate."

The Board subsequently reversed the April 3, 2014 order and required Crowder to undergo a new medical evaluation. The Board acknowledged there were unusual delays in this matter, but nevertheless found that the facts on which the ALJ relied to bar the Board's expert did not support a conclusion that the Board caused protracted delays that constituted misconduct and justified suppression of its expert. The Board concluded that the delays in the matter were caused by multiple adjournment requests, many of which Crowder requested or to which the parties consented to accommodate Crowder's need for additional time. The Board noted that these adjournments caused presentation of the Board's case to be delayed and ultimately caused its expert to withdraw. The Board therefore found that the ALJ's order

> imposes a sanction on [the Board] that is not justified. Accordingly, the ALJ's decision to exclude [the Board's] request for examination by a new [expert] and to present expert medical evidence was an abuse of discretion. If allowed to stand, it would betray fundamental principles of fairness and justice. This does not serve the public interest which requires that the Board conduct medical examinations of applicants to determine whether they are eligible for disability retirement. [N.J.S.A.] 43:16A-7.

The Board also compared the probative value of its expert evidence to the delays in the matter, and noted that expert medical testimony is highly probative and is required in accidental disability cases where the issue of direct result is

A-0094-17T4

in dispute.  Thus, the Board found that it was severely prejudiced by the barring of its expert and concluded:

> As such, the Board reasons that [its] expert medical evidence is crucial to its position that [Crowder] is not eligible for accidental disability retirement benefits. By excluding [the Board's] relevant expert medical evidence, the Board finds that the ALJ has significantly prejudiced [the Board's] case as that evidence is necessary to counter [Crowder's] claims.

Crowder argues that the Board decision was arbitrary, capricious and unreasonable because the Board failed to address its own conduct in causing the significant delays.  This argument lacks merit.

N.J.A.C. 1:1-15.1(c) governs the admissibility of evidence in administrative proceedings and provides, in pertinent part, that:

> All relevant evidence is admissible except as otherwise provided herein.  A judge may, in his or her discretion, exclude any evidence if its probative value is substantially outweighed by the risk that its admission will either:
>
> 1. Necessitate undue consumption of time; or
>
> 2. Create substantial danger of undue prejudice or confusion.

"Evidence rulings shall be made to promote fundamental principles of fairness and justice and to aid in the ascertainment of truth."  N.J.A.C. 1:1-

20

15.1(b).  Evidentiary rulings are reviewed for abuse of discretion.  Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016).  Reversal is warranted if the ruling "was so wide off the mark that a manifest denial of justice resulted."  Ibid. (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).  Such was the case here.

Expert medical evidence is highly probative in the evaluation of an application for accidental disability retirement benefits.  N.J.S.A. 43:16A-7(1) provides that a PFRS member may be retired on an accidental disability retirement allowance "provided, that the medical board, after a medical examination of such member, shall certify that the member is permanently and totally disabled as a direct result of a traumatic event[.]"  Thus, the statute expressly provides that the Board must conduct a medical evaluation and consider the evaluation in determining whether to grant an application for accidental disability retirement benefits.  The very requirement that the "disability constitute the 'direct result' of a traumatic event [is] intended to impose a stringent test of medical causation[.]"  Korelnia, 83 N.J. at 170.  Thus, medical evidence is necessary to determine whether an applicant's disability is the direct result of a traumatic event.  See id. at 171.

The issue before the ALJ and the Board was whether Crowder's disability was a direct result of the traumatic event. In order to address that issue, the Board sought to refute Crowder's claims of medical causation and, therefore, its expert evidence was highly probative. The issue thus is whether the probative value was outweighed by the risk that its admission will "[n]ecessitate undue consumption of time." N.J.A.C. 1:1-15.1(c)(1). Crowder claims there was an undue consumption of time and a third medical evaluation would cause further undue delay to his detriment. However, he fails to acknowledge the extent to which he contributed to the delays in this matter.

Although the need to conduct a third medical evaluation due to the unavailability of the Board's expert caused a delay, a review of the record reveals that Crowder's conduct also caused several delays. Notably, the matter was delayed from January 10, 2011 until October 17, 2011 due to Crowder's two adjournment requests and in order to allow him more time to obtain additional evidence. Although a hearing was held on October 17, 2011, the matter was further delayed due to the need for an additional hearing, which was caused by the unavailability of the Board's expert. The ALJ scheduled the additional hearing for February 15, 2012, but the hearing was subsequently adjourned after Crowder requested an adjournment "due to the unavailability of medical

experts." The ALJ further adjourned the hearing to September 26, 2012, because Crowder had raised the prior incidents and had to submit documentation to the Board regarding those incidents.

In July 2012, the OAL assigned the matter to a new ALJ, who scheduled hearing dates in December 2012. However, those dates were also adjourned because Crowder's experts were unavailable. The OAL then assigned the matter to a new ALJ, who scheduled a hearing for November 14, 2013. The hearing was adjourned because the Board's expert would no longer testify and Crowder had to undergo a third medical evaluation by a new expert. This prompted Crowder's motion to bar the Board's expert and resulted in the ALJ's April 3, 2014 order.

Although the history of the delays in this matter is extensive and somewhat complicated, it is clear that both parties were responsible for the delays, and Crowder made several adjournment requests and requests for additional hearings that contributed to the delay and ultimately led to the Board's need to retain a new expert. Thus, any undue expense or burden caused by the delay cannot be attributed solely to the Board, and the further delay caused by the need for a third medical evaluation does not outweigh the necessity and

probative value of the expert evidence. Thus, the Board's decision to reverse the ALJ's April 3, 2014 order was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0094-17T4