**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0755-18T3

WANDA SLATER,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

     Respondent-Respondent.

_____

Argued March 10, 2020 – Decided June 24, 2020

Before Judges Ostrer and Susswein.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-10-053314.

Samuel Michael Gaylord argued the cause for appellant (Gaylord Popp LLC, attorneys; Samuel Michael Gaylord, of counsel and on the brief).

Christopher Robert Meyer, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa,

Assistant Attorney General, of counsel; Christopher Robert Meyer, on the brief).

PER CURIAM

Petitioner, Wanda Slater, is a former corrections officer who appeals from a final agency decision by the Police and Firemen's Retirement System (PFRS) Board denying her request for accidental disability benefits. The Board instead awarded ordinary disability benefits. The key issue in dispute is whether her disability is a direct result of traumatic work-related events. Slater contends the Board erred by modifying the findings of an Administrative Law Judge (ALJ) and by rejecting his recommendation to award her accidental disability benefits. We have reviewed the record and the arguments of the parties in light of the governing legal principles and affirm the Board's decision.

I.

Slater served as a corrections officer in the Department of Corrections (DOC) from 2000 to 2015. In January 2006, she slipped and fell during a prison riot at Northern State Prison. The fall caused her to twist and injure her right ankle. She began treatment under workers' compensation with Dr. Sheldon Lin, an orthopedic surgeon who specializes in foot and ankle care. Dr. Lin diagnosed Slater with internal derangement of the right ankle and recommended physical therapy and nonsteroidal anti-inflammatory medication.

A-0755-18T3

During a subsequent visit to Dr. Lin, Slater reported a popping sensation in her right ankle. An MRI revealed a subluxing peroneal tendon and the lack of a groove in petitioner's distal fibula. Slater's distal fibula lacked a groove from the time of her birth.

In June 2006, Dr. Lin performed surgery to create a groove in petitioner's right ankle, providing stability to petitioner's peroneal tendon and preventing it from subluxing. Slater's condition steadily improved during the course of follow-up treatment and in April 2007, Dr. Lin cleared petitioner to return to work.

In April 2009, Slater slipped and fell on her back and buttocks while assisting an inmate to get out of a vehicle. She was transported to the emergency room, where medical personnel x-rayed her lumbar spine and pelvis. Slater reported ankle pain, although the emergency room personnel reported no deformity regarding her ankles, did not note which ankle she reported to be painful, and did not x-ray her ankles.

Slater initially received care for her 2009 injury from Dr. Schob. Shortly after the accident, Dr. Schob performed an ankle exam and determined Slater's ankles were normal. She returned to work within a few months after the 2009 accident.

A-0755-18T3

Starting in June 2010, petitioner went back to Dr. Lin. He ordered an MRI on her left ankle in October 2014 and in January 2015, he diagnosed a peroneal tendonitis split tear. After non-surgical treatment failed to remedy her symptoms, Dr. Lin performed surgery to fix the torn tendon in her left ankle. This procedure was more substantial than the surgery he had previously performed on her right ankle. While recovering, she suffered a pulmonary embolism. She was not able to return to work following the second surgery.

Slater filed an application for accidental disability benefits in July 2016. In December 2016, the Board denied her application and instead granted ordinary disability benefits. The Board determined she was not disabled as a direct result of the slip-and-fall accidents that occurred in 2006 and 2009 but rather as a result of complications arising from the surgery performed in 2015. The Board declined to characterize the surgery as a work-related injury. The Board also found there was no evidence to support Slater's contention that her disability was a result of delayed manifestation of the injuries sustained in the 2006 and 2009 incidents.

Slater filed an administrative appeal and in February 2017, the Board transferred the case to the Office of Administrative Law for a hearing. The evidentiary hearing was conducted over the course of two days in February

4

2018.  The ALJ closed the record on June 15, 2018, and on July 3, 2018, he rendered an initial decision, recommending Slater be granted accidental disability benefits.

On July 27, 2018, the Board filed exceptions to the ALJ's opinion.  In August 2018, the Board voted to modify the ALJ's factual findings and rejected the ALJ's legal conclusions.  The Board issued its final factual findings and legal conclusions on September 14, 2018.  This appeal follows.

II.

Slater's treating physician, Dr. Lin, testified as her expert.  He stated that it would be an "honest assessment" to conclude that the shallow or non-existent groove in the distal fibula of her right ankle placed her at a much higher risk of having a subluxation.  Dr. Lin testified that because she was asymptomatic prior to the 2006 accident, there was a reasonable probability that "but for the work accident" she could have lived her whole life without suffering problems from the lack of a groove in her right distal fibula.  Dr. Lin acknowledged that in making this assessment, he did not review any medical records to determine whether Slater had suffered injuries to her right ankle prior to the 2006 accident.  Rather, his knowledge of her medical history and the facts concerning her fall in 2006 was based on her self-reporting.

As we have noted, Slater returned to Dr. Lin's care in 2010. He ordered an MRI on Slater's left ankle in October 2014. The MRI revealed a split tear in the peroneal tendon of her left ankle. Dr. Lin testified a split tear only occurs after a traumatic event and does not develop over time. He further testified that he "could see how" the split tear was causally related to the 2009 accident.[1] He acknowledged that he reviewed no medical documentation suggesting that Slater had a history of problems with her left ankle.

In sum, Dr. Lin opined that the injuries to Slater's ankles related to the 2006 accident. He added that the 2009 accident was also a substantial cause of her disability. He also opined that Slater's pulmonary embolism was causally related to her surgery in 2015.

Dr. James Lamprakos testified for the Board. He examined petitioner in March 2016. He was provided notes and records concerning the 2006 and 2009 incidents, and he interviewed Slater about both slip-and-fall accidents.

Dr. Lamprakos expressed concern with the time gap in the records that had been provided to him. He noted that after Dr. Schob's note in 2009, the next records provided to him related to petitioner's surgery in 2015. Dr. Lamprakos

---

[1] It is not clear from Dr. Lin's testimony whether petitioner's left ankle also lacks a groove in her distal fibula.

testified he felt the records concerning petitioner's injuries were disjointed and missing certain information.

Dr. Lamprakos concluded that Slater was totally disabled from performing her duties as a corrections officer. However, he opined that the 2009 incident was not the direct cause of her disability because although she reported pain in the emergency room, the emergency room documented no ankle deformity and Dr. Schob noted petitioner's ankles appeared normal. He also opined that Slater was not disabled as a direct result of the 2006 incident.

After reviewing the testimony from Slater and the two experts, the ALJ found that Slater's permanent disability was the direct result of her 2006 and 2009 work-related injuries. The ALJ also found that petitioner's 2015 surgery was a result of her work-related injuries.[2] As a result of these findings, the ALJ recommended petitioner be awarded accidental disability retirement benefits.

---

[2] The ALJ also departed from the Board's initial decision by finding that Slater's attempts to return to work constituted a circumstance preventing her from applying for disability retirement within five years of the 2006 or 2009 incidents. As a general rule, an applicant seeking accidental disability benefits must file their application within five years of the traumatic event that caused the disability. N.J.S.A. 43:16A-7. However, the five-year statute of limitations may be waived by a demonstration from the applicant that "the disability is due to the accident and the filing was not accomplished within the five-year period due to a delayed manifestation of the disability or to other circumstances beyond the control of the member." Ibid. When an applicant's disability manifests

After exceptions were filed, the Board issued a final decision deviating from the ALJ's decision both factually and legally. Noting that Slater could not provide any details about her 2006 accident, the Board concluded she failed to prove that event was the cause of her disability.

Regarding the 2009 incident, the Board emphasized the lack of contemporaneous medical records pertaining to any ankle injuries. The Board found that the only records that had been produced were the emergency room records and Dr. Schob's note, both of which reported petitioner's ankles were normal. The Board noted that Dr. Lin's opinion relied on Slater's self-reporting concerning the 2009 slip-and-fall. The Board found that her summary of the 2009 accident was too vague to allow Dr. Lin to make a reliable determination

---

outside the five-year window, the applicant must file for accidental disability "within a reasonable period." In re Crimaldi, 396 N.J. Super. 599, 605–06 (App. Div. 2007).

The ALJ found that Slater sought medical attention promptly after the 2006 and 2009 accidents. He further found that she continued to receive care from multiple physicians in an attempt to continue working as a corrections officer. The ALJ concluded it would be illogical and impractical for Slater to have filed for disability retirement while undergoing treatment and attempting to return to work.

In its final decision, the Board did not address whether petitioner's disability would qualify as a delayed manifestation. In these circumstances, we consider Slater's application for accidental disability benefits to have been timely filed. We therefore address her contentions on the merits.

concerning causation. The Board also noted that Dr. Schob's report, prepared shortly after the 2009 accident, stated that her ankles were normal.

Finally, the Board rejected petitioner's contention that her 2015 left-ankle surgery resulted from her injuries in 2006 or 2009. The Board noted that Slater had stated she had the surgery because of dried blood after years of improper medical treatment. Accordingly, the Board found that there was no support in the record for Slater's claim that the accidents caused her to have surgery in 2015.

Upon making these factual findings, the Board rejected the ALJ's legal conclusion that petitioner was entitled to accidental disability benefits. The Board concluded that Slater failed to establish that her work-related accidents directly resulted in her orthopedic disability.[3]

## III.

Slater contends the Board abused its discretion in making its factual findings and that she presented adequate proofs to warrant accidental disability benefits. We begin our analysis of Slater's contentions by acknowledging certain legal principles that constrain the scope and nature of our review. As the

---

[3] The Board also found that because Slater failed to present testimony from a pulmonary expert, she failed to carry her burden of proof with respect to her alleged pulmonary disability.

New Jersey Supreme Court has made clear, appellate review of an agency's final decision is limited. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988). Courts presume agency actions are valid and reasonable, and the burden is on the plaintiff to overcome that presumption. Bergen Pines Cty. Hosp. v. N.J. Dep't of Human Servs., 96 N.J. 456, 477 (1984) (citations omitted). Typically, an appellate court will only reverse a decision of an administrative agency if it is "arbitrary, capricious, or unreasonable, or if it is not supported by substantial credible evidence in the record as a whole." P.F. v. N.J. Div. of Developmental Disabilities, 139 N.J. 522, 529–30 (1995) (citations omitted).

Importantly, a reviewing court cannot substitute its own judgment in place of the agency judgment, even if the court would have reached a different result. In re Stallworth, 208 N.J. 182, 194 (2011) (citing In re Carter, 191 N.J. 474, 483 (2007)). Rather, when "the Appellate Division is satisfied after its review that the evidence and the inferences to be drawn therefrom support the agency head's decision, then it must affirm even if the court feels that it would have reached a different result itself." Clowes, 109 N.J. at 588 (citations omitted). This is particularly true when we are reviewing an issue related to an agency's special "expertise and superior knowledge of a particular field." Stallworth, 208 N.J. at 194–95 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

A-0755-18T3

There are limits, however, on an agency's discretion to deviate from credibility findings made by an ALJ. N.J.S.A. 52:14B-10(c), for example, provides in pertinent part that,

> [t]he agency head may not reject or modify any findings of fact as to issues of credibility of lay witness testimony unless it is first determined from a review of the record that the findings are arbitrary, capricious or unreasonable or are not supported by sufficient, competent, and credible evidence in the record.

Accordingly, an agency is "not at liberty to simply substitute its judgment for that of the ALJ's." ZRB, LLC v. N.J. Dep't of Envtl. Prot., 403 N.J. Super. 531, 561 (App. Div. 2008) (quoting Cavalieri v. Bd. of Trs. of the Pub. Emps. Ret. Sys., 368 N.J. Super. 527, 534 (App.Div.2004)). However, the testimony of expert witnesses is not subject to the constraints of N.J.S.A. 52:14B-10(c). Ibid.

IV.

We turn next to the substantive legal principles we must apply in this appeal. Accidental disability benefits under PFRS are more generous than ordinary disability benefits. Kasper v. Bd. of Trs. of Teachers' Pension & Annuity Fund, 164 N.J. 564, 573–74 (2000) (citations omitted). That more generous level of compensation comes with a cost—applicants must satisfy a more stringent eligibility standard. Id. at 574.

11

In order to qualify for accidental disability benefits, an applicant must demonstrate he or she "is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his [or her] regular or assigned duties and that such disability was not the result of the member's willful negligence." N.J.S.A. 43:16A-7. In <u>Richardson v. Board of Trustees, Police & Firemen's Retirement System</u>, our Supreme Court distilled N.J.S.A. 43:16A-7 into a five-factor standard that an applicant must demonstrate to obtain accidental disability benefits. 192 N.J. 189, 212–13 (2007). As outlined in <u>Richardson</u>, an applicant must prove:

> 1. that he [or she] is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and
>>
>> c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; and

> 5. that the member is mentally or physically incapacitated from his usual or any other duty.
>
> [Ibid.]

In this case, only a portion of the second Richardson factor is at issue. The Board in its initial decision found that the 2006 and 2009 slip-and-fall accidents were identifiable as to place and time, undesigned and unexpected, occurred during and as a result of the performance of petitioner's duties, and were not the result of her willful negligence. Both experts testified that petitioner was totally disabled and unable to perform her duties as a corrections officer. The critical issue in dispute is whether petitioner's disability is a direct result of the 2006 or 2009 work-related accidents.

The direct result standard is satisfied where the applicant demonstrates a traumatic event was "the essential significant or the substantial contributing cause of the resultant disability." Gerba v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 83 N.J. 174, 186 (1980). This fact-sensitive assessment becomes more complicated when the applicant has a preexisting disease or underlying medical condition. "Where there exists an underlying condition . . . which itself has not been directly caused, but is only aggravated or ignited, by the trauma, then the resulting disability is . . . 'ordinary' rather than 'accidental' . . . ." Ibid.; see also N.J.S.A. 43:15A-43(a) ("Permanent and total disability resulting from a

cardiovascular, pulmonary or musculo-skeletal condition which was not a direct result of a traumatic event occurring in the performance of duty shall be deemed an ordinary disability.").

This standard, however, is not so stringent as to require an applicant to establish that the traumatic event is the "sole or exclusive causative agent" of the applicant's disability. Korelnia v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 83 N.J. 163, 170 (1980) (citing Gerba, 83 N.J. at 186). "[A]n accidental disability may under certain circumstances involve a combination of both traumatic and pathological origins." Ibid. (citing Cattani v. Bd. of Trs., Police & Firemen's Ret. Sys., 69 N.J. 578, 586 (1976)). Ultimately, in a case involving the combined effect of a preexisting condition and a traumatic event, the lodestar of the direct result inquiry is simply whether the traumatic event is "the essential significant or the substantial contributing cause of the resultant disability." Gerba, 83 N.J. at 186. The burden of establishing direct causation between total disability and a traumatic event rests with the applicant, who must make the requisite causal showing by a preponderance of the evidence. Atkinson v. Parsekian, 37 N.J. 143, 149 (1962) (citations omitted) (applying the preponderance standard in agency proceedings).

Applying the foregoing principles to the record before us, we are constrained to defer to the Board's findings. We appreciate Slater's argument that Dr. Lin, an orthopedic surgeon, was her treating physician and had the opportunity to actually observe the condition of her ankles while performing two surgeries. We nonetheless reject her contention that the Board abused its discretion in discounting his opinion on the issue of causation in favor of the opinion rendered by Dr. Lamprakos.

We note with respect to the slip-and-fall accident in 2006, Slater recovered from her right ankle injury and returned to work in 2007. Slater did not return to Dr. Lin's care until June 2010. The record does not show why or how problems resurfaced with her right ankle. As Dr. Lamprakos noted when rendering his expert opinion, there are significant gaps in the treatment records adduced at the hearing. In these circumstances, we do not believe the Board acted unreasonably in finding that the 2006 right ankle injury did not cause her present disability.

So too, the Board acted reasonably in discounting Dr. Lin's opinion that the 2009 slip-and-fall incident directly caused petitioner's left-ankle disability. Dr. Lin testified that Slater's left ankle injury, a peroneal brevis split tear, is an

acute injury that develops only after an inciting incident. Accordingly, this injury would have been present while she was receiving treatment immediately after the 2009 accident. However, both the emergency room records and Dr. Schob's notes indicate that petitioner's ankles appeared normal and lacked any visible deformity.

In sum, we conclude the Board acted reasonably in finding, ultimately, that Slater has not sustained her burden to establish that her orthopedic disability was the result of a work-related incident, or that the 2015 surgery was the result of a work-related incident. We decline to substitute our judgment for the judgment of the Board. Stallworth, 208 N.J. at 194 (citing Carter, 191 N.J. at 483).

Nor did the Board abuse its discretion in determining that petitioner failed to prove her alleged pulmonary disability was a direct result of the 2006 or 2009 work-related injuries. The Board acted reasonably in discounting Dr. Lin's expert opinion concerning petitioner's pulmonary disability because this opinion was rendered on a topic outside of his specialty, orthopedics. Cf. Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 86 (App. Div. 1961) (noting that a physician's experiential weakness may be exposed by showing he is a general practitioner rendering an opinion on a specialized area of medicine).

16

Furthermore, petitioner underwent surgery in 2015 in order to repair her left ankle injury. As we have held, the Board reasonably concluded this surgery was not the direct result of her work-related accidents. Accordingly, the Board reasonably concluded that her accidents were not a substantial contributing cause of her pulmonary disability resulting from the surgery.

To the extent that we have not addressed them, any other contentions raised by Slater lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0755-18T3