935 A.2d 836 (2007)
396 N.J. Super. 599
In the Matter of Anthony CRIMALDI.
Superior Court of New Jersey, Appellate Division.
Submitted November 13, 2007.
Decided December 6, 2007.
Ronald S. Kaplan, attorney for appellant Anthony Crimaldi.
Anne Milgram, Attorney General, attorney for respondent Board of Trustees of the Public Employees Retirement System (Patrick DeAlmeida, Assistant Attorney General, of counsel; Eileen S. Den Bleyker, Deputy Attorney General, on the brief).
Before Judges STERN, COLLESTER and C.S. FISHER.
The opinion of the court was delivered by
STERN, P.J.A.D.
Petitioner, Anthony Crimaldi, appeals from the final administrative determination of the Board of Trustees of the Public Employees Retirement System ("PERS") which, on January 18, 2007, rejected the initial decision of an Administrative Law Judge ("ALJ") and denied Crimaldi's application for an accidental disability retirement. The Board determined that "the ALJ erroneously concluded that Petitioner met his burden by satisfying N.J.S.A. 45:15A-43 to permit the filing of his application beyond the 5 year statutory limitation." That statute permits a filing for an accidental disability pension beyond the five year limitation period "due to a delayed manifestation." The relevant portion of the statute provides:
The application to accomplish such retirement must be filed within five years *837 of the original traumatic event, but the board of trustees may consider an application filed after the five-year period if it can be factually demonstrated to the satisfaction of the board of trustees that the disability is due to the accident and the filing was not accomplished within the five-year period due to a delayed manifestation of the disability or to circumstances beyond the control of the member.
[N.J.S.A. 43:15A-43 (emphasis added).]
As the Board accepted the ALJ's factual findings and the "only issue" before the Board was "whether the requirements of N.J.S.A. 43:15A-43 [were] satisfied to permit filing of an application beyond the 5-year statutory limitation," the issue before us is essentially one of law to which the Board is entitled to limited deference. See Mayflower Secs. v. Bureau of Secs., 64 N.J. 85, 93, 312 A.2d 497 (1973); see also Thurber v. City of Burlington, 191 N.J. 487, 501-02, 924 A.2d 533 (2007). Once the issue of statutory construction is resolved, the question of factual application must also be addressed. See, e.g., Thurber, supra, 191 N.J. at 501-02, 924 A.2d 533; Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963).
The critical facts related to the filing were stipulated before the ALJ, as follows:
1. Petitioner, Anthony Crimaldi, was born on October 4, 1946, and was employed by the Hazlet Board of Education.
2. He was enrolled in the Public Employees' Retirement System ("PERS".)
3. On December 16, 2002, Petitioner filed an application for disability retirement for an accident which occurred on August 5, 1994. Additionally, he requested an effective date of retirement of May 1, 2001. However, as the application was not received until the middle of December 2002, the first effective date of any benefit to which he may be entitled was January 1, 2003. As such, the staff at the Division of Pensions and Benefits changed the date. (Joint Exhibit 1  application for disability retirement.)
4. The Petitioner submitted an employer's first report of accidental injury or occupational illness describing the accident of August 5, 1994, wherein he slipped while descending a ladder. (Joint Exhibit 2.)
5. By letter dated May 17, 2000, the Board of Education in Hazlet Township notified Mr. Crimaldi that it would not renew his contract for the 2000-2001 school year. This recommendation from the Superintendent of Schools and the School Business Administrator was based upon Mr. Crimaldi's attendance record for the past few years and his continued inability to perform the work required as a maintenance worker in the school district. (Joint Exhibit 3.)
6. At its August 20, 2003, meeting the PERS Board of Trustees denied Petitioner's application for an accidental disability retirement allowance on the grounds that he did not file his application within five years of the original traumatic event. The Board noted that it may consider an application filed after the five-year period if it can be factually demonstrated to the satisfaction of the Board that the disability was due to the accident and the filing was not accomplished within the five-year period due to a delayed manifestation of the disability or to circumstances beyond the control of the member. Consequently, the Board could find no evidence to support that he failed to file within the requisite five-year period due to delayed manifestation and denied his application on solely that basis. (Joint Exhibit 4.) At the time that this correspondence was drafted, *838 Petitioner did not have enough time in the retirement system to qualify for an ordinary disability retirement benefit, even though he had been found to be totally and permanently disabled. Once the employer had made the requisite contributions based upon Petitioner's Workers' Compensation matter, the ordinary disability was granted.
7. Petitioner's counsel wrote to the Board of Trustees of the Public Employees' Retirement System by letter dated August 26, 2003, to appeal the decision of the PERS Board regarding this denial and thereby request a formal hearing before the Office of Administrative law. (Joint Exhibit 5.)
8. On September 18, 2003, the Board of Trustees of PERS wrote to both the Office of Administrative law as well as the Petitioner granting Petitioner's request for an administrative hearing, thereby transmitting the Petitioner's file to the OAL. (Joint Exhibit 6.)
The ALJ then added the following findings of fact which are substantially uncontested:
Mr. Crimaldi worked for the Hazlet Board of Education ("Hazlet") as a maintenance mechanic when he was injured in the accident of August 1994. As a result of the accident he injured vertebrae, separated both shoulders, suffered neck trauma, broke his coccyx and his wrist. He received Workers' Compensation and was out of work for one year, during which he had a spinal fusion. After he returned he was again out of work due to another surgery and was out of work for another year, undergoing surgery to remove the hardware related to the fusion. Thereafter he had shoulder surgery and his coccyx was removed. He does not believe that he worked for 2 1/2 years in those five years following the accident. He suffered another accident at work in 1999 and underwent shoulder surgery as a result. His workers' compensation benefits ended in December 2000 or January 2001. At some point, apparently after May 2000, Mr. Crimaldi went to the pharmacy to get medication and was advised that his prescription plan was no longer valid. He called Hazlet and was advised that his contract had been canceled. In fact, as stipulated, Hazlet had determined as of May 17, 2000 not to renew Mr. Crimaldi's contract for the 2000-2001 school year due to his "continued inability to perform the work required as a Maintenance Worker in the school district." Mr. Crimaldi denied having received this May 17 letter at that time, finally getting it in August or September.
Crimaldi explained that the doctor treating him for the 1994 accident did not release him from treatment until January 2001. When he learned of Hazlet's action, he needed to work and applied to Western Monmouth Utilities, where he worked from March 5 until sometime in April 2001. He could not perform that work and was not made a permanent employee. He continued to look for work and obtained a job as a supervisor at Kensington Court Apartments.
The member testified that in 2001 he called the Pension Board and was told by Kathleen Coates, who is currently the secretary of the PERS and then worked in client services involving benefits education and publications, that he did not have enough service time to qualify for an ordinary pension and that it was too late for him to file for an accidental disability pension. She did not advise that there were instances where "late" applications could be made.

*839 Mr. Crimaldi insisted that during the time he was receiving treatment for the 1994 accident no doctor advised him that he could return to work. He always assumed that he would be returning to work with Hazlet. When he was released by the doctor in January 2001, he was told that he might require additional surgery on his shoulder, but he has not had to do so as of this date.
The application for an accidental disability pension was filed in December 2002 on the advice of counsel.
Kathleen Coates testified that while she did answer telephones as a telephone counselor in the late 1980s; she did not do so after February 1989, when she was transferred into work for the deferred compensation plan and then after, February, 1995, when she went back to client services until April 2000, she did not answer phones, as her work involved seminars and she was often on the road. She then worked in planning and research in the office of the Director of Pensions, developing a business plan for the Division of Pensions and Benefits. She had no telephone contact with members in this position. Although she is familiar with Mr. Crimaldi's case from telephone contacts in September 2003 with counsel for Mr. Crimaldi and later in January 2004 with Deputy Attorney General Culliton, she has no recollection of any telephone contact with Mr. Crimaldi between May and December of 2000. There is no policy to prevent members from filing applications after five years following an accident. She was comfortable with saying that she never advised Mr. Crimaldi that he could not file an application.
In this case there is agreement that petitioner suffered a "traumatic event" during the course of employment, see Richardson v. PFRS, 192 N.J. 189, 927 A.2d 543 (2007), and that there was a "delayed manifestation." Therefore, we do not examine those questions. Nor is there a dispute that petitioner was ineligible for an ordinary disability until workers' compensation benefits were paid. The questions before us deal with when the "manifestation" occurred and how long thereafter did petitioner have in which to file his application.
The ALJ concluded:
Of course, the statute itself does not speak to the question of how much time may pass after the delayed manifestation of a permanent and total disability before the filing of an application will be considered too late. The statute does provide that in the absence of delayed manifestation or circumstances beyond the control of the member, the period in which filing may timely occur is five years. Thus, even in the case of an immediate manifestation after the traumatic event of the most obvious examples of total and permanent disability, a member is given five years to file. But where the manifestation is delayed beyond that five year post-event period, the statute only says that the Board "may" consider an application, it does not say how long after the manifestation the application must be filed. Given this lack of specificity as to the existence of an allowable time period for filing following a delayed manifestation, resort to a reasonableness standard is warranted. But how is reasonableness defined in this circumstance?
. . . .
It seems most proper that the five year period allowed by the Legislature for filing after the disabling event be utilized as the measure for timely filing from the date of the manifestation of a disability. This allows a fixed and easily applied test for determining timeliness *840 from the date of actual or chargeable knowledge that the member is indeed disabled. Any other measure of "reasonableness" imports uncertainty into the process and can lead to discrimination against those whose disabilities are not manifest until after five years as against those whose permanent and total disability is apparent within the first five years.
Given the above, Mr. Crimaldi's permanent and total disability was not manifest until at least that time when the district told him he could no longer perform his job. This was arguably May 2001, but he claimed not to have received the letter until August or September. Even if one utilized the May date, this is the earliest date after the first five year period closed when manifestation can be found. Filing in December 2002 was well within five years of this date, and surely even more so if the date utilized as the point of manifestation is moved back to the date in April 2001, when Mr. Crimaldi learned that Western Monmouth would not make a permanent employee because it concluded that he could not perform the work.
The Board rejected the ALJ's reasoning because, although the ALJ found that the application had to be filed within a "reasonable period," he concluded that it was "reasonable" to file at any time within the five years after the manifestation. According to the Board, petitioner "clearly knew of his disability by May 2001 when he was terminated from his second job" which required that he act diligently thereafter. The Board also found that "the clear evidence is that Crimaldi knew or should have known that he was totally and permanently incapacitated from his duties as a custodian from the Hazlet Board of Education when the notice of non-renewal was sent on May 17, 2000," when his contract was not renewed thereafter, and when all medical treatment ceased in January 2001. Nevertheless, petitioner waited until December 16, 2002 before filing his claim. The Board concluded that petitioner proffered "no justification for the delay of 1 1/2 to 2 years after the manifestation of his disability."
The appeal presents an interesting question, and petitioner argues that
N.J.S.A. 43:15A-43 allows an employee to file for an accidental disability within five (5) years from the date of the accident which gives rise to the disability but allows an employee to file after the five (5) year period if the employee can show that the disability is not manifested until more than five (5) years after the accident.
He further contends that even if he does not receive a full five years after the manifestation in which to file his claim, the Board was arbitrary and capricious in finding that his claim was not filed within a reasonable time. Hence, we must decide if the statute permits a filing for up to five years after the "delayed manifestation" or for only a "reasonable period" thereafter, and if the latter, whether the record supports the Board's finding that petitioner waited an "unreasonable" period of time.
We are satisfied that the statute gives the Board discretion to extend the filing deadline for specific reasons, and given that authority and the Board's obligation to protect the public purse, we agree with its construction of the statute that the filing for an accidental disability must be within a reasonable period after the physical manifestation beyond the five-year period.[1]
*841 In finding that Crimaldi did not file his claim within a reasonable period, the Board concluded that:
Crimaldi had substantial absences from work due to his disability, he continued to undergo surgeries and receive treatment for these injuries and, because he could not perform the duties in May 2000, the employer notified Crimaldi that his employment contract would not be renewed. According to Crimaldi, this notice was received months later in December 2000, yet he admittedly did not return to work at the beginning of the contract term in September 2000. In January 2001, Crimaldi was released from medical treatment under the workers compensation claim. Thus, the clear evidence is that Crimaldi knew or should have known that he was totally and permanently incapacitated from his duties as a custodian for the Hazlet Board of Education when the notice of non-renewal was sent in May 17, 2000. This was reaffirmed again in September 2000 when actual employment under the new contract term did not commence and reaffirmed once more in January 2001 when all medical treatment ceased. Yet, the application for accidental disability was not filed until December 16, 2002  nearly two years later. Even [the ALJ] concedes a 2-year delay might be considered unreasonable. (Initial Decision at 8). If the "manifestation" of the disability is extended further and deemed to be April 2001 when Crimaldi was terminated by his second employer, Western Monmouth Utilities, a delay of 1 1/2 years still does not bring the filing of this claim within a reasonable time after manifestation of the disability. Thus, while Crimaldi is arguably entitled to some relaxation of the 5-year limitation so as to permit him to file an application for disability, he is obligated to do so promptly upon discovery of the disability and must file within a "reasonable time" thereafter.
. . . .
Here Crimaldi did not pursue his claim diligently and he proffers no justification for the delay of 1 1/2 to 2 years after the manifestation of his disability. The interests of all parties are best served by requiring members, especially those who are competent and fully aware of the occurrence of the accident such as Mr. Crimaldi was, to make timely claims. The totality of the undisputed facts and circumstances in this case support a conclusion that Mr. Crimaldi did not act diligently here.
We believe a more fact-sensitive analysis is required as to when the delayed manifestation actually occurred, why the filing was delayed thereafter, and what prejudice would result to the PERS as a result of the late filing, in determining what was "reasonable"[2] under the circumstances. The lack of clarity in the law with respect to petitioner's right to wait five years after the manifestation would also be relevant to the balance in this case. We also believe that, because injured workers would ordinarily seek disability benefits as soon as possible, permitting this delayed filing *842 would not result in either the filing of many delayed claims or be inconsistent with the liberal purposes behind our laws providing for disability pensions. See Geller v. Dept. of Treasury, 53 N.J. 591, 252 A.2d 393 (1969); Uricoli v. Board of Trustees, 91 N.J. 62, 449 A.2d 1267 (1982). In any event, further consideration of these factors is warranted before the Board can determine that the petitioner's application was unreasonably late.
The final administrative determination is reversed, and the matter is remanded to the Board for further proceedings consistent with this opinion.
NOTES
[1] We recognize that the ALJ's construction parallels the approach of the Supreme Court in its case law development of the time period in which to bring a personal injury action after "discovery" of an injury as a result of the fault of another, at least where the two-year statute of limitations has not yet expired at the time of discovery. See, e.g., Abboud v. Viscomi, 111 N.J. 56, 58, 543 A.2d 29 (1988) (first paragraph of Point I); Vispisiano v. Ashland Chemical Co., 107 N.J. 416, 438-39, 527 A.2d 66 (1987) (Clifford, J. concurring); Fox v. Passaic General Hospital, 71 N.J. 122, 363 A.2d 341 (1976).
[2] Petitioner does not suggest that rulemaking is required with respect to the adjudication of the issue involved. See Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313, 478 A.2d 742 (1984).