**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2889-19

ALEXANDER ILIC,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued October 19, 2021 – Decided February 7, 2022

Before Judges Fasciale and Vernoia.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. x-xx082.

John D. Feeley argued the cause for appellant (Feeley & LaRocca, LLC, and The Blanco Law Firm, LLC, attorneys; Pablo N. Blanco, of counsel and on the brief; John D. Feeley, on the brief).

Thomas R. Hower, Staff Attorney, argued the cause for respondent (Robert Seymour Garrison, Jr., Director of

Legal Affairs, attorney; Thomas R. Hower, on the brief).

PER CURIAM

In a final decision, the Board of Trustees (the Board) of the Police and Firemen's Retirement System (PFRS) determined former police officer Alexander Ilic is permanently disabled as a result of post-traumatic stress disorder (PTSD). The Board granted Ilic ordinary disability retirement benefits but denied his application for accidental disability retirement benefits.[1] Ilic appeals from the decision, claiming the Board erred by denying his application for accidental disability retirement benefits. Having reviewed the record in light of the applicable legal principles and the parties' argument, we affirm in part, vacate in part, and remand for further proceedings.

I.

Prior to addressing the record before the Board, we summarize the legal principles that guide our analysis and provide context for our discussion of the issues and arguments presented on appeal.

---

[1] "[A]n accidental disability retirement entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Thompson v. Bd. of Trustees, Teachers' Pension & Annuity Fund, 449 N.J. Super. 478, 484 (App. Div. 2017), aff'd o.b., 233 N.J. 232 (2018) (quoting Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 43 (2008)).

A-2889-19

N.J.S.A. 43:16A-7(a)(1) authorizes an award of an accidental disability pension to a PFRS member provided

> the medical board, after a medical examination of such member, [certifies] that the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties and that such disability was not the result of the member's willful negligence and that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him.
>
> [N.J.S.A. 43:16A-7(a)(1).]

In Richardson v. Board of Trustees, Police & Firemen's Retirement System, the Court explained that to establish an entitlement to accidental disability retirement benefits under N.J.S.A. 43:16A-7(a)(1), a claimant must prove:

> 1. that he is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and
>>
>> c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[192 N.J. 189, 212-13 (2007).]

Where a claim for accidental disability retirement benefits is founded on a permanent mental disability as the result of a mental stressor without any physical impact, satisfaction of Richardson's direct-result requirement requires proof the disability "result[ed] from direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the [claimant] or another person." Patterson, 194 N.J. at 33-34. The requirement "achieve[s] the important assurance that the traumatic event posited as the basis for an accidental disability pension is not inconsequential but is objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury." Ibid.

In Mount v. Board of Trustees, Police and Fireman's Retirement System, the Court explained "N.J.S.A. 43:16A-7(1)'s 'traumatic event' language

4

mandates a two-step analysis in cases in which a [PFRS] member claims permanent mental incapacity as a result of an exclusively psychological trauma." 233 N.J. 402, 426 (2018). A court must "first determine[] whether the [claimant] directly experienced a 'terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person.'" Ibid. (quoting Patterson, 194 N.J. at 50). The "event must be 'of consequence and objectively capable of causing a reasonable person to suffer a disabling mental injury.'" Ibid. (quoting Russo v. Bd. of Trs., Police and Fireman's Ret. Sys., 206 N.J. 14, 31 (2011)). It is only where the claimant establishes the event satisfies those standards that a court must undertake the second step of the analysis — applying "the Richardson factors" to determine if the claimant is entitled to accidental disability retirement benefits. Ibid.

In addition to the substantive requirements for receipt of accidental disability retirement benefits, a claimant must also comply with N.J.S.A. 43:16A-7(a)(1)'s procedural requirements. The statute requires that applicants file an application for accidental disability retirement benefits "within five years of the original traumatic event." N.J.S.A. 43:16A-7(a)(1). An application may, however, be considered by the Board after the five-year period "if it can be

factually demonstrated to the satisfaction of the [B]oard . . . that the disability is due to the accident and the filing was not accomplished within the five-year period due to a delayed manifestation of the disability or to other circumstances beyond the control of the member." Ibid.

With those fundamental principles governing the grant of accidental disability retirement benefits as a backdrop, we address Ilic's application for those benefits and the Board's determination he is not entitled to them.

II.

In 2001, Ilic began his employment as a police officer in the City of Patterson. On May 1, 2015, he filed an application with PFRS for accidental disability retirement benefits. In his application, he claimed he suffered from a disability—PTSD—resulting from two workplace incidents. First, Ilic asserted that while on duty on December 5, 2009, he was asked by a taxicab driver to remove a passenger from the driver's vehicle, and, when Ilic opened the door of the taxi, the passenger pointed a gun at him. Ilic averred he then "fired two shots" at the passenger in response.

Ilic's application asserted the second incident occurred on May 21, 2011, when he and his partner heard gunshots while on patrol. According to his application, Ilic saw the suspect walking in their direction holding a handgun.

A-2889-19

His partner then "fired gunshots through [the] windshield" of their patrol car "and [the] suspect fled." Ilic alleged he "pursued the suspect on foot while [his] partner pursued in the" patrol car. At some point, the suspect ran toward Ilic, and Ilic "fired several shots at the suspect" because he "believe[ed] the suspect was still armed with the handgun and about to fire" at him. The application does not allege the suspect ever pointed or fired a gun at either Ilic or his partner and does not aver anyone was injured during the incident.

The Board denied Ilic's application in an October 20, 2016 letter. The Board determined the 2009 and 2011 incidents were "identifiable as to time and place, [were] undesigned and unexpected, occurred during and as a result of [Ilic's] regular . . . duties[,] and [were] not the result of [Ilic's] willful negligence." The Board, however, rejected the application, finding Ilic was not permanently disabled and, as result, there was no evidence establishing "direct causation from either incident."

The Board also found the 2009 and 2011 incidents did not involve "personal experience[s] of a terrifying or horror-inducing event that involved actual or threatened death or serious injury to" Ilic or another person, and, for that reason, the incidents were "not objectively capable of causing a reasonable person in similar circumstances to suffer a disabling injury." The Board further

7

determined Ilic's application for accidental disability retirement benefits for the 2009 incident was untimely because it was not filed within five years of the incident, and there was no evidence "the alleged disability is a result of delayed manifestation from" that incident.

Ilic appealed from the Board's determination, and the matter was referred to the Office of Administrative Law (OAL) as a contested case. During the subsequent three-day trial before an administrative law judge (ALJ), Ilic testified, and he presented on his behalf Dr. David Pilchman, Ph.D., an expert in psychology; Dr. Daniel Gollin, M.D., an expert in psychiatry; and Dr. Michael Bizzarro, Ph.D., an expert in clinical social work. Dr. Pilchman and Dr. Gollin separately examined Ilic and testified as experts in their respective fields. At the time of the trial, Dr. Bizzarro had been treating Ilic for "four or five" years and testified as Ilic's treating clinical social worker and as an expert in his field. PFRS presented the testimony of Dr. Richard A. Filippone, Ph.D., who examined Ilic and testified as an expert in clinical psychology.

The ALJ made findings of fact concerning the two incidents. The ALJ found that during the 2009 incident, Ilic was dispatched on a call involving a taxi passenger refusing to pay the taxi driver. The ALJ found "[t]he seemingly minor offense turned serious when the passenger pointed a gun at [Ilic] from his

8

seated position in the back seat of the cab" and Ilic "fired his weapon in the direction of the passenger," who suffered "a gunshot wound to his left thigh." Ilic was "shaken" by the incident and taken to the hospital for "observation and treatment." The ALJ noted Ilic "did not recall how many shots were fired or if the [passenger] ever fired his weapon."

As the ALJ explained, following the incident, Ilic was referred to a mental health provider, but was cleared to return to full duty after two weeks. Ilic felt "more anxious and jittery" following the incident, but he continued performing all his duties as a police officer.

The ALJ found the 2011 incident occurred while Ilic and his partner were on patrol and "saw and heard a suspect firing a handgun at an unknown male." According to the ALJ, the "suspect then pointed the gun at the officers who were still within the patrol car."[2] The ALJ found Ilic recalled only "that shots were

---

[2] We observe the record does not include any evidence the suspect pointed his gun at Ilic or the patrol car, or that, as Ilic claims on appeal, the suspect fired shots at the patrol car. During his testimony, Ilic explained that "shots rang out across the way" from where he and his partner were located, and that they "proceeded towards the direction of the shots." When asked directly if the suspect fired shots at him, Ilic testified that he did not know "the direction of the suspect's shots." Ilic explained he "proceeded to exit the vehicle" when "shots rang out . . . right where he was." When asked if the shots were coming toward him, Ilic stated only that "they sounded like they were right next to him." He testified the patrol vehicle's "windshield" was struck with bullets, but he did

fired from inside the police vehicle and a spray of bullets hit the windshield," but the ALJ also found Ilic "recalled shooting by his partner as well as the suspect."[3] The ALJ further found the suspect then "tossed the handgun" and fled but was apprehended by another officer.

The ALJ found Ilic was placed on light duty following the 2011 incident, but when he was placed on "active duty sometime later, [Ilic] was terrified, and his partner had to bring him back to the [police] station." The ALJ noted Ilic testified that by 2014 he "felt incapable of returning to patrol, firing a weapon, or making split second decisions."

In her initial decision, the ALJ concluded Ilic was not entitled to accidental disability retirement benefits because he failed to prove the 2009 and 2011 incidents were "undesigned and unexpected" and that a reasonable police officer would not have suffered a disabling mental condition as a result of the

---

not testify the suspect fired the shots that struck the windshield. In his application for accidental disability retirement benefits, however, Ilic stated the suspect walked toward the patrol car with a gun in his hand, but Ilic did not allege the suspect either pointed the gun, or shot the gun, in the direction of the patrol car. In the application, Ilic also represented that his partner fired shots at the suspect through the front windshield of the patrol car.

[3] Again, the record is bereft of evidence the suspect fired shots at the officers or the patrol vehicle or that any of the bullets that hit the windshield were fired from the suspect's gun.

A-2889-19

incidents. The ALJ concluded Ilic "is not accidentally disabled in accordance with the legal requirements for that form of disability retirement." The ALJ did, however, find Ilic was "emotionally and psychologically unable to perform" the duties of a police officer and concluded "the Board correctly qualified him for an ordinary disability retirement."

Following the ALJ's initial decision, counsel for PFRS filed exceptions to the decision. In an August 13, 2019 letter, the Board noted a series of errors in the ALJ's initial decision. The ALJ erred by finding the Board had deemed Ilic qualified for an ordinary disability pension because, in fact, the Board's October 20, 2016 letter denying his application included a determination Ilic was not permanently disabled. The Board also found the ALJ did not provide an explanation for the conclusion the 2009 and 2011 incidents "did not satisfy the Patterson standard of being . . . objectively terrifying event[s] capable of disabling a reasonable person under the circumstances." The Board also concluded the ALJ erred by determining the 2009 and 2011 incidents were not "undesigned and unexpected" since it did not transmit that issue to the OAL and the Board's October 20, 2016 letter included its determination the incidents were "undesigned and unexpected."

The Board remanded the matter to the ALJ "to resolve the issues of total and permanent disability causation, the standard for mental-mental claims under Patterson . . . and the issue of delayed manifestation."  The Board remanded "the issue of delayed manifestation regarding the [2009] incident" because it was not addressed in the ALJ's initial decision.  The Board directed the ALJ to provide the "necessary legal reasoning and, as necessary, additional factual findings" supporting the decision on remand.

On remand, the parties agreed the ALJ should decide the issues on the trial record.  In the remand decision, the ALJ found Ilic's application was untimely as it pertained to the 2009 incident because it was filed more than five years after the incident and the testimony of Dr. Gollin and Dr. Bizzarro established there was no delayed manifestation of Ilic's PTSD that otherwise might permit a late filing of the application.

Although the Board remanded for the ALJ to provide an explanation for her conclusions, the ALJ did not analyze the evidence pertaining to the 2009 incident.  Instead, the ALJ made only a conclusory determination Ilic did not satisfy the standards for accidental disability retirement benefits because the evidence did not establish the incident was an "experience of a terrifying or horror-inducing event that involved actual or threatened death or serious injury."

The ALJ similarly found Ilic failed to sustain his burden of establishing the 2011 incident involved "an objectively terrifying or horror-inducing event," but the ALJ provided an analysis of the evidence supporting the conclusion. The ALJ noted that although the incident involved the firing of a gun, neither Ilic "nor his partner in the vehicle with him . . . were struck by bullets"; Ilic did not witness his partner nor anyone else "facing serious bodily injury"; the shots were fired by his partner "from within the police vehicle through the windshield at a suspect"; and "there is very scant testimony as to what really happened insofar as only [Ilic] testified, and he recalled very little of the actual details" of the incident. The ALJ concluded petitioner failed to establish "that a reasonable person in similar circumstances would have suffered a mentally disabling condition as a result of the" 2011 incident.

The ALJ determined Ilic is not entitled to an accidental disability pension but concluded Ilic is otherwise emotionally and psychologically unable to perform the duties of a police officer. The ALJ accepted Dr. Bizzarro's testimony that Ilic is totally and permanently disabled, and the ALJ awarded Ilic an ordinary disability pension.

In its final agency decision, the Board adopted the ALJ's findings of fact and determination Ilic is not entitled to accidental disability retirement benefits.

A-2889-19

The Board further adopted the ALJ's finding Ilic is totally and permanently disabled from the performance of his duties as a police officer, and it awarded Ilic ordinary disability retirement benefits. This appeal followed.

III.

Judicial review of quasi-judicial agency determinations is limited. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo, 206 N.J. at 27). "An agency's determination on the merits will be 'sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Tr., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27). Our review is limited to the following three inquires:

> (1) whether the agency's actions violate[] express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars, 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

14

A-2889-19

"The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)). "Where . . . the determination is founded upon sufficient credible evidence seen from the totality of the record and on that record findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980), overruled on other grounds by Maynard v. Bd. of Trs., Teachers' Pension & Annuity Fund, 113 N.J. 169 (1988). We review de novo "an agency's interpretation of a statute or case law." Russo, 206 N.J. at 27.

The issues presented by Ilic's appeal are limited. He argues the Board erred by finding his application for accidental disability retirement benefits founded on the 2009 incident was untimely filed. He also argues the Board erred by finding he is not entitled to accidental disability retirement benefits based on its determination neither the 2009 nor 2011 incidents constitute the type of

terrifying or horror-inducing event involving actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the claimant or another person, sufficient to satisfy the Patterson standard. See Patterson, 194 N.J. at 33-34.[4] We consider the arguments in turn.

A.

The ALJ found Ilic's application for accidental disability retirement benefits was untimely under N.J.S.A. 43:16A-7(a)(1). The ALJ recognized that although the statute requires the filing of an application for disability benefits within five years of the original traumatic event, the Board may consider an application filed beyond the five-year period where the disability is due to the event and a timely filing was not made "due to a delayed manifestation of the disability." N.J.S.A. 43:16A-7(a)(1).

In a terse discussion of the issue, the ALJ found Ilic did not have a "delay in the manifestations of PTSD" based on the testimony of Dr. Gollin and Dr. Bizzarro that Ilic first suffered from PTSD caused by the 2009 incident shortly

---

[4] Ilic also argues the Board erred by finding the incidents were not "undesigned and unexpected." See Richardson, 192 N.J. at 212. It is unnecessary to address that issue because the Board found the incidents were undesigned and unexpected in its October 26, 2016 letter denying his application; noted in its August 13, 2019 letter that it had previously decided the issue; and concedes in its brief on appeal the incidents satisfied the undesigned and unexpected standard.

after it occurred. The ALJ also relied on Dr. Bizzarro's testimony that Ilic's PTSD symptoms "waxed and waned after the 2009 incident." The ALJ reasoned there was no delay in the manifestation of Ilic's disability permitting the otherwise late filing of the application as to the 2009 incident because his waxing and waning symptoms following the incident constituted manifestations of his disability—PTSD. The Board adopted the ALJ's findings and conclusions.

The ALJ and the Board applied the incorrect legal standard in determining the testimony of Dr. Gollin and Dr. Bizzarro established the application was untimely under N.J.S.A. 43:16A-7(a)(1). We explained in Hayes v. Board of Trustees, Police & Firemen's Retirement System, that "[a]s used in N.J.S.A. 43:16A-7(a)(1), 'manifestation' relates to the 'disability.'" 421 N.J. Super. 43, 52 (App. Div. 2011). Under the statute, a "'disability' is not mere stress and anxiety, with which" a claimant may have coped in performing police duties, it is "a condition of such magnitude as to disable [the claimant] from returning to police work." Ibid. The "critical fact" in determining if there is a delay in the "manifestation of the disability" under N.J.S.A. 43:16A-7(a)(1) "is when [the claimant] 'knew or should have known that he was totally and permanently

incapacitated from his duties.'" Id. at 54 (quoting In re Crimaldi, 396 N.J. Super. 599, 605 (App. Div. 2007)).

In Hayes, we found delayed manifestation of a disability where a claimant took leave from work for three weeks following a traumatic incident, was initially assigned to administrative work before resuming regular duties, and experienced anxiety and insomnia but carried out her regular duties for more than five years before it became apparent she was permanently disabled. Id. at 47-48, 52-54. We determined there was delayed manifestation of the claimant's disability under N.J.S.A. 43:16A-7(a)(1) until the condition "disable[d] her from returning to police work." Id. at 52.

The fact that Ilic's symptoms waxed and waned following the 2009 incident does not support the ALJ and Board's conclusion there was not a delay in the manifestation of his disability. Dr. Gollin and Dr. Bizzarro's testimony Ilic experienced symptoms of PTSD following the incident did permit or require a rejection of Ilic's delayed manifestation claim. That is because the waxing and waning symptoms did not prevent him from totally and permanently performing his job duties. See ibid. And, in fact, Ilic returned to perform his job duties following the 2009 incident and was engaged in the performance of those duties when the 2011 incident occurred.

18

That is not to say Ilic's application was timely submitted. An application for accidental disability benefits must be filed within five-years of the traumatic event. N.J.S.A. 43:16A-7(a)(1). The statute does not provide that an application must be filed within five years of the manifestation of the disability. However, the statute allows the Board to accept an application filed beyond the five-year deadline where there is a delayed manifestation of a disability, and the application is filed within a reasonable time thereafter. Crimaldi, 396 N.J. Super. at 605-06;[5] see also Hayes, 421 N.J. Super. at 55 (finding an application for accidental disability retirement benefits filed more than five years after the traumatic incident but "within two months of the [claimant] learning for the first time that she suffered from a disability preventing her from returning to her employment" was filed within a reasonable time and could be accepted by the Board under N.J.S.A. 43:16A-7(a)(1)).

---

[5] In Crimaldi, we interpreted N.J.S.A. 43:15A-43(a) which governs applications for accidental disability retirement benefits for members of the Public Employees' Retirement System. 396 N.J. Super. at 605-07. The language in N.J.S.A. 43:15A-43(a) setting a five-year deadline for the filing of an application for accidental disability benefits and the consideration of applications filed after the deadline where it can be shown there was a delayed manifestation of a disability is identical to the language addressed to those issues in N.J.S.A. 43:16A-7(a)(1). Compare N.J.S.A. 43:15A-43(a) with N.J.S.A. 43:16A-7(a)(1).

Ilic's application was filed on May 1, 2015, more than five years after the December 5, 2009 incident, but he contends the delay in the manifestation of his disability allowed the Board to consider his application as timely under N.J.S.A. 43:16A-7(a)(1). As we explained in Crimaldi, to determine the timeliness of an application for accidental disability retirement benefits, a "fact-sensitive analysis is required as to when the delayed manifestation actually occurred, why the filing was delayed thereafter, and what prejudice would result to [PFRS] as a result of a late filing, in determining what [is] 'reasonable' under the circumstances."[6] 396 N.J. Super. at 607. Neither the ALJ nor the Board conducted that analysis or made the necessary findings of fact pertinent to the proper resolution of that issue, because they applied the wrong legal standard in their determination of the timeliness issue.

---

[6] The analysis requires consideration of other factors as well, including any lack in clarity in the law with regarding to Ilic's right to file the application within five years of the manifestation of disability; the "liberal purposes behind our laws providing for disability pensions"; and any other factors bearing on the reasonableness of the delay in the filing of the application after the manifestation of the disability. Crimaldi, 396 N.J. Super. at 607. Those other factors may include whether Ilic filed within a reasonable time after the manifestation of his disability and whether he could have timely filed his application within five years of the 2009 incident as required by N.J.S.A. 43:16A-7(a)(1) by filing it within a reasonable time after the manifestation of his disability. See Hayes, 421 N.J. Super. at 55.

We vacate the ALJ and Board's determination Ilic failed to demonstrate there was a delayed manifestation of his disability from the 2009 incident under N.J.S.A. 43:16A-7(a)(1). The determination is based on an application of the incorrect legal standard and is otherwise untethered to appropriate findings of fact. See Allstars, 234 N.J. at 157. A determination of the temporal parameters of the delay in the manifestation of the disability under the correct standard is essential to the proper assessment of the timeliness of Ilic's application. In our view, the findings of fact correlated to the proper legal standard must be made in the first instance by the Board. It is only after those findings are made that it can be properly determined if Ilic's May 1, 2015 application was timely as to the 2009 incident and whether any decision by the Board concerning the timeliness of the filing is reasonable. See Crimaldi, 396 N.J. Super. at 605-06. We remand for the Board to make those determinations, which shall be supported by appropriate findings of fact and conclusions of law. We offer no opinion on the merits of the issue.

B.

Ilic also claims the Board erred by finding he is not entitled to accidental disability retirement benefits because he failed to prove the 2009 and 2011 incidents constituted experiences of terrifying or horror-inducing events that

involved actual or threatened death or serious injury. Ilic claims the incidents satisfied the <u>Patterson</u> standard, <u>see</u> <u>Patterson</u>, 194 N.J. at 50, because they each involved "shootings and an exchange of gunfire" and an actual threat of death.

As we have explained, where a claimant seeks accidental disability retirement benefits based on a "permanent mental incapacity as a result of an exclusively psychological trauma," <u>Mount</u>, 233 N.J. at 426, it must first be "determine[d] whether the [claimant] directly experienced a 'terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the [claimant] or another person,'" <u>ibid.</u> (quoting <u>Patterson</u>, 194 N.J. at 50). The traumatic event must be "objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury." <u>Patterson</u>, 194 N.J. at 34. If the claimant's mental incapacity is not the result of such an event, no accidental disability retirement benefits may be awarded. <u>Mount</u>, 233 N.J. at 426.

In <u>Patterson</u>, the Court noted the enactment of N.J.S.A. 40A:14-195, which created county law enforcement crisis intervention centers to provide "post-traumatic debriefing and counseling services" for officers who have been involved in incidents, including "the firing of a weapon or the exchange of gun fire." 194 N.J. at 45 (quoting N.J.S.A. 40A:14-196). The Court explained the

22

"gravamen of [the] statute is that the Legislature has specifically recognized that a traumatic event giving rise to a mental disability, like PTSD, may, but need not, involve physical impact," and, importantly, the Court found the statute "sheds light on the meaning of the term 'traumatic event' in the accidental disability statutes." Ibid. As detailed by the Court, the "law-enforcement specific" categories of incidents in N.J.S.A. 40A:14-196, including the firing of a weapon or the exchange of gunfire, "reflect the Legislature's general acceptance of the view of the psychiatric community regarding the quality of traumatic event that might be expected to result in a mental injury." Id. at 49.

The Court also provided examples of events that would meet the requirement of a terrifying or horror-inducing event. Id. at 50. The Court said that "a permanently mentally disabled policemen who sees his partner shot; a teacher who is held hostage by a student; and a government lawyer used as a shield by a defendant all could vault the traumatic event threshold." Ibid. The Court found that a claimant who was mentally disabled because of a superior's disparaging comments did not satisfy the traumatic event requirement because the conduct "did not involve actual or threatened death or serious injury to [the claimant's] physical integrity." Id. at 51. In contrast, the Court determined another claimant satisfied the traumatic event standard by demonstrating a

23

"credible threat of rape and murder against [his] wife and daughter by a presumed gang member who knew where [the claimant] lived and worked." Id. at 52.

Based on the record presented here, we discern no basis to reverse the Board's determination Ilic failed to establish the 2011 incident was a traumatic event under the Patterson standard. As the ALJ correctly found, it was Ilic's burden to prove his mental disability was the direct result of a traumatic event, but at trial he provided scant and vague details regarding the 2011 incident.

The ALJ found the suspect pointed a gun at Ilic and his partner, but we reject that finding because there is no evidence supporting it. Ilic and his partner arrived at a scene where the suspect was firing his weapon at an "unknown male," but there is no evidence the suspect pointed a gun at Ilic or his partner or fired any shots at them. Indeed, Ilic testified he did not know the direction of the shots fired by the suspect. In his application for disability benefits, Ilic stated only he and his partner responded to a report of shots fired, and when they arrived the suspect held a gun in his hand. Ilic's application stated he fired shots at the suspect after the suspect fled, but at trial he testified only that he discharged his weapon that evening, the suspect fled and was subsequently apprehended, and no one was physically harmed during the incident.

In sum, the evidence supports only a finding Ilic and his partner responded to a report of shots being fired at another individual. Upon their arrival, Ilic's partner fired shots at the suspect through the windshield of the patrol car, and at some point Ilic discharged his weapon. There is no evidence the suspect threatened Ilic or his partner with a gun or pointed his gun or fired it at Ilic, his partner, or their patrol car.

Ilic did not present evidence he was involved in an exchange of gunfire or that he was ever threatened with death or serious bodily injury,[7] and no one was injured during the incident. Although the Court in Patterson suggested the firing of a weapon might constitute a traumatic event, 194 N.J. at 50, based on the evidence presented we do not find the mere fact that Ilic's partner fired his gun at the suspect, and Ilic discharged his weapon in some manner during the incident, rendered the incident a terrifying or horror-inducing event that involved actual or threatened death or serious injury sufficient to establish the traumatic event required by the Court in Patterson. See Russo, 206 N.J. at 32. We therefore affirm the Board's denial of Ilic's application for accidental disability benefits founded on the 2011 incident.

---

[7] We again note that although the ALJ found in her initial decision that the suspect pointed his gun at Ilic and his partner, there is no evidence in the record supporting that finding.

C.

We view the 2009 incident differently for two reasons. First, unlike with the ALJ's determination concerning the 2011 incident, the ALJ's limited findings of fact pertaining to the 2009 incident, and the absence of any correlation of those facts to the Patterson traumatic event threshold, leave us without an adequate record with which to determine if the credible evidence supports a finding Ilic satisfied the standard. Indeed, the Board remanded the matter to the ALJ to make appropriate findings and to explain her determination under the traumatic event standard, but on remand the ALJ merely adopted her initial terse factual findings and made only a conclusory assertion the 2009 incident did not satisfy the Patterson standard. 194 N.J. at 50. Although that is hardly the explanation required by the Board's remand, the Board simply adopted the ALJ's findings and conclusion in its final decision.

The second reason we view the 2009 incident differently than the 2011 incident is the ALJ's findings of fact suggest grounds supporting a finding it constituted a traumatic event, but it is unclear whether the ALJ and the Board considered them. During the 2009 incident, it appears Ilic was confronted with a threat of death or serious bodily injury, because the passenger of the taxicab, who was in close proximity to Ilic as he opened the taxi door, pointed a gun at

A-2889-19

him.[8]  In response, Ilic fired his weapon twice at the passenger, causing a bullet wound to the passenger's leg.  The record shows the passenger was taken to a hospital, but the full extent of his injuries is not revealed.

In any event, those facts suggest the incident is encompassed by Patterson's definition of a traumatic event through the Court's incorporation by reference to the critical incidents defined in N.J.S.A. 40A:14-196, which include "the firing of a weapon or the exchange of gun fire."  194 N.J. at 45.  And, as noted, the evidence shows Ilic's safety and life were threatened, and he not only Ilic fired his gun twice, he also injured another person.

We do not detail that evidence and those facts for the purpose of offering an opinion on the merits of whether the 2009 incident constituted a traumatic event under the Patterson standard.  We offer none.  We detail them for the purpose of pointing out they were not considered, assessed, or analyzed in any reasoned explanation by the ALJ and the Board in making their conclusory determination the incident was not sufficiently traumatic to support an award of accidental disability retirement benefits.  It is not our role to find the facts and

---

[8] During its counsel's cross-examination of Ilic, PFRS effectively acknowledged the passenger posed a threat to Ilic's life by pointing a gun at him.  During his questioning of Ilic, counsel pointed out that during the 2009 incident, Ilic successfully "managed to defend [himself]" when his "life was in danger."

27

correlate the facts to the applicable legal standard in the first instance. See State v. Locurto, 157 N.J. 463, 471 (1999) (explaining a reviewing court does not "engage in an independent assessment of the evidence as if it were the court of first instance"); see also Philadelphia Newspapers, Inc. v. Bd. of Rev., 397 N.J. Super. 309, 317 (App. Div. 2007) (holding "[t]here should not be an independent assessment of the evidence by the appellate court"). Given our level of deference to the Board's determinations, its failure to make the necessary findings and correlate them to the applicable legal standards in the first instance constitutes a particular disservice to the parties, that attorney's and the reviewing court, Gnall v. Gnall, 222 N.J. 414, 428 (2015), and effectively precludes proper appellative review.

For those reasons, we vacate the Board's determination the 2009 incident did not constitute a traumatic event under the Patterson standard and remand the issue to the Board for its reconsideration and determination. Given our determination the Board correctly concluded the 2011 incident did not constitute a traumatic event supporting an award of accidental disability benefits, in the event the Board determines the 2009 incident constituted a traumatic event, it shall also consider and decide whether Ilic's disability was a direct result of the 2009 incident. Patterson, 194 N.J. at 52. As noted, on remand the Board shall

28

also consider and decide whether the application for benefits based on the 2009 incident was timely filed.

We offer no opinion on any of the remand issues, and we leave it to the Board and the parties to address the appropriate procedures required for their resolution, including whether any additional evidentiary hearings are required. We direct that the Board's final determination be accompanied by findings of fact supported by the current record, and any supplement to that record during the remand, and conclusions of law tethered to the applicable legal standards.

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2889-19